# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**THE ESTATE OF AMBER ROBINSON**,
**deceased, by JOANN MARTINEZ,**
**her mother and sole beneficiary**,

      Plaintiff,

vs.                                                                  No. CIV 06-1009 MCA/RHS

**THE STATE OF NEW MEXICO,**
**ex rel. the Department of Children,**
**Youth and Families, and FRAN MULDEZ,**
**individually**,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' *Motion to Dismiss* [Doc. 2], filed October 27, 2006. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants the motion.

## I. BACKGROUND

The following factual allegations have been taken from Plaintiff's *Civil Complaint for Wrongful Death* [Doc. 1; Exh. A] and thus are accepted as true for purposes of Defendants' motion to dismiss. See Sutton v. Utah State Sch. for Deaf and Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).

Amber Michelle Robinson was a 19-year-old Portales, New Mexico resident when she was killed in the spring of 2004. On or about March 6, 2006, Clifford Baca ("Clifford")

pled guilty to Robinson's murder and his brother, Richard Baca ("Richard"), is scheduled to be tried in March 2007 for first degree murder.

Amber Robinson was last seen alive on April 26, 2004.  At that time, Richard was a juvenile probationer/parolee who had been placed on probation on or about September 18, 2003 and whose assigned probation officer was Defendant Fran Muldez.  In March 2004, Richard was removed from a rehabilitation program in Roswell, New Mexico for fighting. As a result, alleges Plaintiff, he should have been incarcerated and his probation should have been revoked, but neither occurred.  Instead, Richard, who was known by the Juvenile Probation Office to be a dangerous career criminal, was returned to Portales "where he aimlessly roamed the streets[;]" violated the terms and conditions of his probation by refusing to meet with Officer Muldez; "terroriz[ed] the citizenry[,] including Amber Robinson[;]" and generally posed a substantial risk of harm to others.   [Doc. 1; Exh. A at 2-3].

On or about April 22, 2004, the Portales Police Department received a telephone call advising that Richard, who had been drinking, was present at a fraternity house and attempting to provoke a fight.  The police telephoned the Juvenile Probation Office, which told the police to deliver Richard to his father.  According to the complaint, as of this time Richard should have been incarcerated for numerous probation violations; instead, he remained free to kidnap and kill Amber Robinson four days later.

On September 26, 2006, Amber Robinson's estate, through her mother and sole beneficiary, Joann Martinez, filed the two-count *Civil Complaint for Wrongful Death* in state

2

court against the State of New Mexico/Department of Children, Youth and Families (hereinafter "CYFD") and Fran Muldez. In Count One, Plaintiff alleges that Defendants owed a duty of care to Amber Robinson to maintain and operate the Juvenile Probation Office in a safe and reasonable manner. Defendants breached this duty by failing to arrest and detain Richard, which proximately caused Amber Robinson's death and Plaintiff's injuries. In Count Two, Plaintiff alleges a substantive due process violation and seeks damages pursuant to 42 U.S.C. §1983. [Doc. 1; Exh. A at 3-4].

On October 18, 2006, Defendants timely removed the action to this Court pursuant to 28 U.S.C. § 1446. [See Doc. 1 at 2]. Defendants now move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) on grounds that (1) the state-law negligence claim asserted in Count One is untimely under the terms of the New Mexico Tort Claims Act; (2) Defendants are immune from liability for negligence; and (3) the factual allegations underlying Plaintiff's substantive due process claim in Count Two fail to set forth a constitutional violation. [See generally Doc. 2].

## II. ANALYSIS

### A. Motion to Dismiss/Motion for Summary Judgment

Dismissal of a complaint under Fed.R.Civ.P. 12(b)(6) is appropriate only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir.1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the

parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir.1991). Accordingly, all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party. GFF Corp., 130 F.3d at 1384.

"When a party moves to dismiss under Rule 12(b)(6) and the district court relies upon material from outside the complaint, the court converts the motion to dismiss into a motion for summary judgment." Burnham v. Humphrey Hospitality Reit Trust, Inc., 403 F.3d 709, 713 (10th Cir. 2005). When a district court effects such a conversion, it must normally provide the parties with notice so that (1) all factual allegations may be met with countervailing evidence, and (2) the parties will not be prejudiced. See Lamb v. Rizzo, 391 F.3d 1133, 1136 n.3 (10th Cir. 2004). Prejudice, however, does not always result from the application of summary-judgment standards. See, e.g., Burnham 403 F.3d at 713-714. For example, where the motion to dismiss relies exclusively upon the facts as pleaded in the complaint and the non-movant first introduces affidavits and exhibits containing facts going beyond those in the complaint, the non-movant has had the opportunity to introduce outside evidence and is therefore not prejudiced by the conversion of the motion to dismiss into a motion for summary judgment. See id. Such is the case in the instant action, where Plaintiff responded to Defendants' challenge to the four corners of the complaint with the sworn

4

affidavit of Amber Robinson's mother and three additional exhibits.[1]

To the extent that this Court has considered materials outside of the complaint, it will review Defendants' motion as one for summary judgment pursuant to Fed.R.Civ.P. 56. See Fed.R.Civ.P. 12(b). Summary judgment under Fed.R.Civ.P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed.R.Civ.P. 56(e). Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Id. Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial). See Celotex, 477 U.S. at 324.

---

[1] Those exhibits are a copy of Amber Robinson's death certificate, a *Report of Findings* from the Office of the Medical Examiner, and counsel's *Notice of Tort Claim*. [Doc. 5; Attached Affidavit and Exhs. 1-3].

It is not the Court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

### 1.     Count One: Negligence

In Count One, Plaintiff alleges that Defendants negligently failed to arrest and detain Richard, as required by law, and that their negligence was the proximate cause of Amber Robinson's death and Plaintiff's consequent injuries. [Doc. 1; Exh. A at 4]. Defendants respond that (1) Plaintiff's claim is untimely, and (2) they are immune from liability under the applicable provisions of the New Mexico Tort Claims Act. [Doc. 2 at 1-2].

Under the New Mexico Tort Claims Act, governmental entities and public employees acting within the scope of duty are immune from tort liability except as expressly waived by NMSA 1978 §§ 41-4-5 through 41-4-12. See NMSA 1978 § 41-4-4(A). Additionally, "[t]he Tort Claims Act requires a tort victim to give a written notice of claim within 90 days after an occurrence giving rise to the claim as a condition precedent to an action under that Act." Godwin v. Mem'l Med. Ctr., 130 N.M. 434, 441 (N.M.App. 2001) (*citing* NMSA 1978 § 41-4-16(A) and (B)). "This notice-of-claim requirement operates as a statutory limitations period and failure to file a timely notice of claim is a statutory bar to suit." Id. The Act further provides, in pertinent part, that "[a]ctions against a governmental entity or

a public employee for torts shall be forever barred, unless such action is commenced within two years after the date of occurrence resulting in loss, injury or death . . . ." NMSA 1978 § 41-4-15.

In this case, Plaintiff gave notice of its tort claim to the Risk Management Department of the State of New Mexico in a letter dated March 16, 2006. [Doc. 5; Exh. 3 at 1]. In that letter, Plaintiff explained that Amber Robinson was killed on April 26, 2004.[2] [Id.]. It should be noted that Amber Robinson's body was discovered on May 7, 2004. Plaintiff asserts it did not realize it had a claim until March 15, 2006, the day that Amber Robinson's mother, Joann Martinez, contacted an attorney. [Doc. 5 at 5]. The New Mexico Tort Claims Act provides that written notice must be given "within 90 days *after an occurrence* giving rise to the claim." NMSA 1978 § 41-4-16(A) (emphasis added). The occurrence that gave rise to the claim in this case was Amber Robinson's death. See Emery v. Univ. of New Mexico Med. Ctr., 96 N.M. 144, 149 (N.M.App. 1981) (for purposes of the 90-day notice requirement of NMSA 1978 § 41-4-16, an occurrence gives rise to a claim when an "injury manifest[s] itself in a physically objective manner and [is] ascertainable."). Even giving Plaintiff every reasonable benefit of the doubt, the latest that the injury, *i.e.*, Amber

---

[2] In the complaint, Plaintiff also asserted that Amber Robinson was killed on April 26, 2004. [See Doc. 1; Exh. A at 2, ¶ 5 ("Amber Robinson was killed on April 26, 2004 by a Juvenile Probationer/Parolee by the name of Richard Baca and his brother Clifford Baca . . . .")]. In its response to Defendants' motion to dismiss, however, Plaintiff appeared to represent that Amber Robinson was killed on May 7, 2004. [See Doc. 5 at 4 ("April 26, 2004 was the last time Ms. Robinson was seen alive . . . . Ms. Robinson's body was found dead by the Portales Police Department on May 7, 2004.")]. Either way, the *Notice of Tort Claim* was filed more than 90 days from the date of death.

Robinson's death, could have manifested itself and been ascertainable was May 7, 2004, when Amber Robinson's body was discovered. Plaintiff's notice, therefore, was untimely.

In addition to providing notice of its tort claim within 90 days of the occurrence giving rise to the claim, Plaintiff was required to have commenced this action "within two years after the date of occurrence resulting in loss, injury or death . . . ." NMSA 1978 § 41-4-15. As explained above, the *Civil Complaint for Wrongful Death* was not filed until September 26, 2006. [See Doc. 1; Exh. A]. Plaintiff argues that "right and justice demand [that Defendants] be estopped from invoking the statute of limitations." [Doc. 5 at 5].

"New Mexico courts are reluctant to apply estoppel to the state[, but will do so] if right and justice demand it." State v. Tower, 133 N.M. 32, 35 (N.M.App. 2002). The elements of equitable estoppel as related to the party estopped are

> (1) conduct amounting to a false representation or concealment of material facts, or at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those that the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; and (3) knowledge, actual or constructive, of the real facts.

Id. As for the party claiming estoppel, the factors are "(1) lack of knowledge and the means of knowledge of the truth as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) action based thereon of such a character as to change his position prejudicially." Id.

In this case, Plaintiff has presented no evidence tending to show that Defendants somehow falsely represented or concealed the fact that Plaintiff was required to comply with

8

the time limits and statutes of limitations set forth in the New Mexico Tort Claims Act. Nor has Plaintiff demonstrated that Defendants intended Plaintiff to act upon their alleged conduct. Moreover, Plaintiff's contention that it "had know (sic) knowledge of Mr. Baca's tawdry conduct and the Defendants['] de facto approval of it until fairly recently[,]" see Doc. 5 at 5, is belied by Joann Martinez's representation that she testified before a grand jury on June 3, 2004, the same day the grand jury returned a true bill against Richard Baca for the murder of her daughter. [See Doc. 5; Attached Nov. 13, 2006 Affidavit of Joann Martinez]. Because Plaintiff has not satisfied the elements for the application of the doctrine of equitable estoppel, it will not be applied in this case.

Even if Plaintiff's action were timely, the Court nevertheless would be constrained to find that immunity has not been expressly waived under the New Mexico Tort Claims Act. See NMSA 1978 § 41-4-4(A). According to Plaintiff, immunity has been waived under the "law enforcement officer" provision of the Act. Section 41-4-12 provides that there is no immunity from

> liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

NMSA 1978 § 41-4-12. Section 41-4-3(D) defines a "law enforcement officer" as

> a full-time salaried public employee of a governmental entity whose principal duties under law are to hold in custody any

9

>person accused of a criminal offense, to maintain public order
>or to make arrests for crimes, or members of the national guard
>when called to active duty by the governor . . . .

NMSA 1978 § 41-4-3(D).

"To determine whether positions are of a law enforcement nature, [courts] will look at the character of the principal duties involved, those duties to which employees devote the majority of their time." Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't, 121 N.M. 646, 649 (N.M. 1996) (*quoting* Anchondo v. Corrs. Dep't, 100 N.M. 108, 110 (N.M. 1983)). In Vigil v. Martinez, the New Mexico Court of Appeals considered the principal duties of probation and parole officers and concluded that they are not "law enforcement officers" as contemplated by the New Mexico Tort Claims Act because holding in custody persons accused of criminal offenses, maintaining public order, and making criminal arrests do not comprise their principal duties. Instead, "[t]heir chief function is rehabilitation." Vigil v. Martinez, 832 P.2d 405, 411 (N.M.App. 1992). Plaintiff attempts to distinguish Vigil by pointing out that "[that] case does not discuss the liability and duties of the Children, Youth and Families Department or that of Juvenile Probation Officers." [Doc. 5 at 7]. This is accurate. However, after listing the powers and duties[3] of juvenile probation

---

[3] These powers and duties are to:

>(1) receive and examine complaints and allegations that a child is a
>delinquent child for the purpose of considering beginning a
>proceeding pursuant to the provisions of the Delinquency Act;
>(2) make case referrals for services as appear appropriate or
>desirable;
>(3) make predisposition studies and assessments and submit reports
>and recommendations to the court;

and parole officers, § 32A-2-5 of the New Mexico Statutes (Children's Code) expressly provides that "[a] juvenile probation and parole officer does not have the powers of a law enforcement officer." NMSA 1978 § 32A-2-5(C). In light of the foregoing, the Court rejects Plaintiff's argument that immunity has been waived under the "law enforcement officer" provision of the New Mexico Tort Claims Act.

## 2.     Count Two: Violation of the Right to Substantive Due Process

Plaintiff next argues that Defendants owed Amber Robinson a duty of care to protect her from Richard's criminal acts and that their alleged breach of this duty amounted to a violation of her (and Plaintiff's) right to substantive due process. [Doc. 5 at 7]. While the Due Process Clause of the Fourteenth Amendment provides that no state shall deprive any

---

(4) supervise and assist a child placed on probation or parole or under supervision by court order or by the juvenile parole board;
(5) give notice to any individual who has been the subject of a petition filed pursuant to the provisions of the Delinquency Act of the sealing of that individual's records in accordance with that act;
(6) informally dispose of up to three misdemeanor charges brought against a child within two years;
(7) give notice to the children's court attorney of the receipt of any felony complaint and of any recommended adjustment of such felony complaint;
(8) identify an Indian child for the purpose of contacting the Indian child's tribe in delinquency cases; and
(9) contact an Indian child's tribe to consult and exchange information for the purpose of preparing a predisposition report when commitment or placement of an Indian child is contemplated or has been ordered and indicate in the report the name of the person contacted in the Indian child's tribe and the results of the contact.

NMSA 1978 § 32A-2-5(B).

person of life, liberty, or property, without due process of law,

> nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," *but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means*.

DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 194 (1989) (emphasis added). The general rule that state actors are liable under the Due Process Clause only for their own actions and not the actions of private citizens comes with two exceptions. State officials may be subject to constitutional liability if (1) they create a danger that results in a harm to an individual, even if that harm is not ultimately inflicted by a state official; or (2) the state has a "special relationship" with the individual who is harmed by the third party. Johnson ex rel. Estate of Cano v. Holmes, 455 F.3d 1133, 1141 (10th Cir. 2006). The Court examines these two exceptions in reverse order.

### a. The "special relationship" theory

"A special relationship . . . exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual." Johnson, 455 F.3d at 1142-43 (internal quotation marks omitted). Thus, a special relationship exists between the state and children in state custody, see Yvonne L., By and Through Lewis v. New Mexico Dep't of Human Servs., 959 F.2d 883 (10th Cir. 1992); between the state and a mentally retarded individual who has been involuntarily committed in a state institution,

12

see Youngberg v. Romeo, 457 U.S. 307 (1982); and between the state and prisoners in its custody. See Estelle v. Gamble, 429 U.S. 97 (1976). In these situations, "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." DeShaney, 489 U.S. at 200.

In this case, Plaintiff does not allege that a special relationship existed between Defendants and Amber Robinson such that that relationship would have triggered an affirmative duty of protection. Instead, Plaintiff asserts that Defendants' inactions created the danger that caused Amber Robinson's death.

### b.    The "danger creation" theory

The "danger creation" theory holds that a plaintiff may establish constitutional liability by demonstrating that

> (1) the charged state entity and the charged individual actors created the danger or increased plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specifically definable group; (3) defendant's conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendant acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking.

Johnson, 455 F.3d at 1145 n.6; see also Currier v. Doran, 242 F.3d 905, 918 (10th Cir. 2001). As the Tenth Circuit has explained, "'[t]he key to the state-created danger cases . . . lies in the state actors' culpable knowledge and conduct in affirmatively placing an individual in a position of danger, effectively stripping a person of her ability to defend

13

herself, or cutting off potential sources of private aid.'" <u>Armijo By and Through Chavez v. Wagon Mound Pub. Schs.</u>, 159 F.3d 1253, 1263 (10th Cir. 1998) (*quoting* <u>Johnson v. Dallas Ind. Sch. Dist.</u>, 38 F.3d 198, 201 (5th Cir.1994)).

As for element (6), it bears noting that "[n]ot all deliberately indifferent conduct is conscience shocking in the constitutional sense of the term." <u>Graves v. Thomas</u>, 450 F.3d 1215, 1222 (10th Cir. 2006). To determine whether conduct shocks the conscience requires the Court to consider the following: (1) the need for restraint in defining substantive due process claims; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety. <u>Uhlrig v. Harder</u>, 64 F.3d 567, 573 (10th Cir. 1995). Conduct that is truly conscience shocking requires a high level of outrageousness, <u>see</u> <u>id.</u> at 574, so as to prevent the constitutionalization of what would otherwise be deemed an ordinary, common-law tort. <u>See</u> <u>DeShaney</u>, 489 U.S. at 202 ("[T]he Due Process Clause of the Fourteenth Amendment . . . does not transform every tort committed by a state actor into a constitutional violation.").

In a case with facts similar to those presented here, the Third Circuit affirmed the 12(b)(6) dismissal of a complaint in which decedent's estate alleged that a state-created danger existed by virtue of the actions of the Westmoreland County Adult Probation Department and its employees in (1) failing to revoke perpetrator's parole; (2) making the assurance, subsequently relied upon by decedent's family, that perpetrator would be taken into custody; and (3) confronting perpetrator but nevertheless failing to take any action against him, effectively "emboldening" perpetrator to commit a crime (the killing of

14

decedent) he otherwise would not have committed.  Bright v. Westmoreland County, 443 F.3d 276, 283 (3rd Cir. 2006).  Concluding that plaintiff/estate had not demonstrated that defendants affirmatively used their authority to create an opportunity that otherwise would not have existed for perpetrator's crime to occur, the Third Circuit held that

> the state cannot "create danger" giving rise to substantive due process liability by failing to more expeditiously seek someone's detention, by expressing an intention to seek such detention without doing so, or by taking note of a probation violation without taking steps to promptly secure the revocation of the probationer's probation.

Id. at 283-284.  It also stressed that liability under the state-created danger theory is predicated upon *affirmative* acts of the state that work to a plaintiff's detriment in terms of exposure to danger, and that it had never found a state-created danger claim to be meritorious absent an allegation and subsequent showing that state authority was *affirmatively* exercised. Id. at 282 (emphasis added).

As in Bright, a close reading of the complaint in this case reveals that the alleged cause of the harm was state *inaction* rather than state action.  See Bright, 443 F.3d at 284 ("The reality of the situation described in the complaint is that what is alleged to have created a danger was the failure of the defendants to utilize their state authority, not their utilization of it.").  Indeed, the allegations here include that (1) after Richard was removed from the rehabilitation program in Roswell his probation should have been, but was not, revoked; (2) as a result of Richard's refusal to meet with Officer Muldez, his probation should have been, but was not, revoked; and (3) Defendants' strategy was to allow Richard to roam the streets

of Portales until he turned 18 years old, so as not to have to deal with him further. [Doc. 1; Exh. A at 2]. In short, the allegations of the complaint make clear that it was not Defendants' *actions* but their *failure to act* that caused the ultimate harm here. See Gonzales v. City of Castle Rock, 307 F.3d 1258, 1263 (10th Cir. 2002) *rev'd on other grounds* ("In assessing [whether the state and state actors created the danger or increased plaintiff's vulnerability to the danger in some way], it is important to distinguish between affirmative conduct that creates or enhances a danger and a failure to act that merely does not decrease or eliminate a pre-existing danger."). The inability to establish that Defendants somehow affirmatively placed Amber Robinson in a position of danger is fatal to Plaintiff's claim of a substantive due process violation.[4]

## III.  CONCLUSION

On the basis of the foregoing, Defendants' *Motion to Dismiss* will be granted in its entirety. As explained, the Court concludes that the allegations set forth in Count One of

---

[4] Alternatively, the Court finds that Plaintiff has failed to show that Amber Robinson "was a member of a limited and specifically definable group[,]" Johnson, 455 F.3d at 1145 n.6, examples of whom include (1) a special education student who had expressed threats of suicide, see Armijo, 159 F.3d at 1264; (2) children the state had removed from their natural parent and taken into state custody, see Currier, 242 F.3d at 920; and (3) a jail guard who was beaten by an inmate. See Poe v. Wyandotte County/Kansas City, 2000 WL 382038, at *3 (D.Kan. 2000) (unpublished opinion). While Plaintiff represents that "Amber Robinson was a close friend of Richard Baca's[,]" [Doc. 5 at 9], there is no allegation that Richard's close friends comprised a limited and specifically definable group for purposes of the "danger creation" theory. To the contrary, the allegations tend to show that, if anything, Richard was a danger to the community at large. [See Doc. 1; Exh. A at 2-3 (asserting that Richard "posed a substantial risk of harm to *others*[;]" was allowed to "roam the streets of Portales, terrorizing the *citizenry*" and appeared at a fraternity in Portales, "looking for a fight with *anybody* who would fight with him" (emphasis added)].

Plaintiff's complaint are time-barred under the applicable provisions of the New Mexico Tort Claims Act and that immunity has not been expressly waived. With respect to Count Two, the Court concludes that Plaintiff's allegations do not come within one of the two recognized exceptions to the general rule that state actors are liable under the Due Process Clause only for their own actions and not the actions of private citizens.

**IT IS, THEREFORE, ORDERED** that Defendants' *Motion to Dismiss* [Doc. 2] is **GRANTED**;

**SO ORDERED** this 5th day of March, 2007, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge